Good morning, Your Honor. Good morning. Your Honors. Sorry. May it please the Court. My name is Lia Dymilova. I represent petitioners in this case. I'm going to tell you a very similar story to the previous case. We have post-persecution, we have relocation, and we have a well-established fear of future persecution. To all of that, I.J. said no, and the agency said no, that I.J. was correct. First, I would like to talk about the well-founded fear of persecution, which one of the part of which is relocation. We have exactly the same situation here as in many other cases, where agency as well as I.J. completely ignore the facts. And not only they ignore the facts within one case, they ignore facts within one paragraph of their own decision. Because in one part, in the beginning of the paragraph, they're saying this and this family member was killed. And then just a tiny little bit later in the same paragraph, they say, but because family was not harmed, she can safely relocate. Well, you have to choose which one it is. It's either one or the other. And the same mistake happens in the I.J. decisions, in the BIA ruling, and then oil brief to this court. They all do exactly the same. Yes, these people were killed. They're family members, but family was unharmed, therefore she can move. Choose your. About the well-founded, the future persecution, because I had read the I.J. and BIA to essentially say there was these terrible killings, but the details of that and the circumstances of that and how that could relate to her is unclear. So that's nexus. Correct. Well, I guess I had read it to more mean that her fear was not objectively grounded just because the details of these killings and their relationship to her was unclear. That's how I interpreted it. Yes. You can tell me if you think that's different. You interpret it differently. What the problem here is not in the facts itself. The problem here is what the BIA and I.J. do with them, because what they do is this person was killed. The partner was killed. You got a threatening call. Then three other people connected to you killed. However, one phone call is not enough for past persecution. Therefore, you don't have a fear of well-founded persecution. Again, what did you analyze right now? Just one phone call. Why do why are we disregarding the death of the partner and death of other family members? If you at least in one sentence explain to us why all of them are unrelated and make no and are, you know, irrelevant to this case. Sure. However, we'll list the facts. But then conclusion is one phone call is not persecution, therefore, no well-founded fear. Again, we are just completely ignoring the facts. And it happened with past persecution, nexus and the future persecution. Another problem. What specific facts do you think were ignored? Everything but the phone call. OK, well, let's be a little more specific. So what the death of the partner that happened nine days before the phone call, I mean, that is discussed in the opinion, right? And then conclusion is one phone call is not persecution. What about the death? It's not OK. It may be not persecution, but shouldn't you state that death of the partner call and death of other family members not does not amount to past persecution? That would be logical. Instead, we have one phone call is not persecution. But where did the rest of the facts go? Also related to that, the problem with analysis is. So we discuss in past persecution. This happened, that happened, that happened. And our conclusion, all of a sudden, no nexus, excuse me. It's either past persecution discussion or nexus discussion. Why are we making conclusion of no nexus after we discuss past persecution? And BIA said we're not touching the nexus because IJ was correct in the past persecution. But he made this mistake of nexus in the discussion of past persecution. So this decision is just one complete pile of everything together. And one like we don't have separate parts in the analysis at all. Like our analysis is just jammed. That's an error of law. They should be remanded to the BIA. So the BIA can actually analyze it correctly. It may not be grant of asylum. It may be a grant of asylum. We don't know because we cannot evaluate it based on the analysis of the BIA and the IJ. Because- Just assume for a moment for the rest of your, for a few minutes here of your time that there was, that the finding of no past persecution is, you know, let's just assume that it's okay.  Okay. Okay. So what about relocation? If we're talking analysis by the agency about relocation, they also made the same mistake. They at least- I'm sorry. You let your voice trail off. Sorry. If we discuss relocation, if we are talking about discussion of relocation by the BIA, again what the BIA did, this person and this person died. But family members, but because her family is unharmed, she can relocate. Which one is it? This person and this person died or family was unharmed? It's a complete just contradiction of the facts within the same paragraph. And conclusion, she can relocate. So it has to be remanded so we can just make the record straight. Because you cannot analyze anything based on this completely errored paragraph. I will keep the remainder of my time, if I may. Sure. Thank you. Ms. Jones, good morning. Good morning. May it please the court, Tracey Jones appearing on behalf of the respondent, the U.S. Attorney General. The court should deny the position for review in this case because the petitioner has failed to meet her burdens of proof in establishing eligibility for relief and protection and the record does not compel a contrary conclusion. I'm going to start with the objectively reasonable fear of future persecution finding because the court seemed to have some concerns about that. The arguments that petitioner's counsel just made is a total mischaracterization of the agency's decisions. The agency did, in fact, consider the deaths of the petitioner's family members and determined that the petitioner wasn't able to provide any details in regards to these deaths. When asked numerous times in regards to each incident, who killed or who committed the murder, petitioner responded, I don't know. When asked why each family member was killed, petitioner again said, I don't know. When asked if these incidents could possibly be non-gang related, petitioner responded, I don't know. Without details of these incidents in which, by the way, they waived those findings because in their opening brief, they never addressed the, I'm sorry, that the killing, the killers were unknown. They never addressed that the target was unknown and she never addressed how each killing was linked and how it was closely tied to her. Yes, this court has determined that when examining eligibility for asylum, you can assess the harm to family members or close relatives or close associates. However, that harm does not substitute for that, to the applicant. The applicant has to show that everything is closely linked and she failed to do that here. The call that she received after, was it Benito's murder? Yes, in 2016. It was very short in time. Proximity was very close. It was like, what, nine days or something? It was nine days. Why isn't that enough? Because there's no evidence of who the caller is. She never presented any details about identifying the caller. Everything is based off of her own suspicions that it's a gang. She couldn't even identify which gang was targeting her or targeting her family members. How was Benito killed? I can't remember. I believe he was shot in the head, yes. And she surmised from that, that that was a gang, right? Because it's common. It's kind of typical the way gangs in her area sort of operate. And even to that, your honor, when asked which gang is controlling your neighborhood, she said, I don't know. It's just the petitioner provided absolutely no details surrounding any of this to determine that she would be eligible for past persecution, that she showed past persecution, or that she even showed an objectively reasonable fear of future persecution. It's just nothing in the record. The only thing that she does point, the only thing that is in the record is generalized country conditions, which this court has held without more is not sufficient to meet the muster of establishing eligibility for asylum or withholding of removal. So how about on the reasonable relocation finding? I mean, take the petitioner to be saying, well, that the findings a little thin. How do you respond to that general objection? Well, I think that's also a mischaracterization on petitioner counsel's part. The court is not, I mean, I'm sorry, the agency is not saying that when you're looking at the deaths of past family members, and then in the same breath saying, well, you still have family, they're unharmed. What the court, I mean, what the agency is saying is that the deaths, there's no link. She didn't connect the dots. But when you're looking at the relocation and the objectively reasonable fear, the fact that she still has siblings there, the fact that she still has extended family members who are similarly situated to her, they're there unharmed, that weakens her objectively reasonable fear. These same family members can assist with any transition from, any transition that the petitioner would need when returning to Mexico. Are these other family members related to, I think his name is Benito again. Well, she only mentioned her siblings and aunts and cousins, which is just her extended family. But the family members that she discussed that had been unfortunately killed were not just related to Benito. She had a nephew herself that was killed. So I don't think that the link is just Benito. I think she's more so trying to argue that the deaths of her close family members, regardless if they were related by blood to Benito. Well, do you think it's significant that the siblings were not related to Benito? No, I don't, Your Honor, because some of the past deaths- I mean, because you have to have some similarity. And I think the similarity she's trying to argue is that it's her family members, not necessarily Benito's. Benito did, she did testify- Was her connection with Benito though, right? That's what she's trying to argue, is that he's a family member of hers, not necessarily that it was there, it was his relationship that is the cause of all this. Because she did mention two deaths, one of her actual nephew and another of a person that she raised, that she was their nanny, to support her claim that she suffered past persecution and have a fear of future persecution. Those two individuals had no relation to Benito, at least she did not present any evidence of such. Now, Benito was the daughter's father. Yes, that's correct. That's a pretty close connection there, right? It is, it is. But at the same point in time, the other deaths that she relies on to support her claim that she suffered past persecution don't have that same relationship. Our close tie. At least she didn't present any, which she has the burden to do, which she failed to do here. Now, looking at the past harm, unless the court has any other questions in regards to the objective reasonable fear, I'll go ahead and move to the past harm. The incidents just do not constitute past persecution. The single threatening phone call that she did receive, which in fact she perceived as a threat, merely stated, you're living alone, be careful, with no, but there's no details surrounding that. There's no details about who may have called her, no specifics in regards to the gang. And on top of that, there's no reason why she was targeted or why Benito was targeted. One could say that, you know, it came nine days after Benito was killed. She was, they shared a child together, they had been going together. Is there any evidence of why Benito was killed in the sense of any activities that he was doing that she was also doing and she was warned about? No, Your Honor. Petitioner testified that prior to Benito's death, she didn't know of any gang affiliation with Benito and any gangs in her area. She also testified that she did not know of any threats that were received before then. And when asked why was Benito killed or why do you believe it was gangs that killed Benito, she merely stated because it was common. That was her suspicion. She didn't present any evidence that, but why as to why Benito was targeted and why he was killed. At the end of the day, Your Honors, the petitioner has the burden of proof to establish and demonstrate eligibility for relief and protection. And she, in this case, she just did not do that. The evidence that the limited generalized country conditions evidence is not sufficient to carry the day. Petitioner was required to connect the dots and demonstrate how each incident was closely tied to her and was committed in hopes or in anticipation of harming her. Petitioner just did not do that here. So in conclusion, the court should deny the petition for review because the petitioner has failed to meet her burden of proof, plain and simple. And the record does not compel a contrary conclusion, nor has she identified any evidence in the record that will compel a contrary conclusion. Thank you. Thank you very much. Your Honors, first, I would like to address the part of me mischaracterizing what the agency did. I'm just going to read from the agency's decision. Keep your voice up if you would. Sorry, I don't know why I'm so quiet today. Normally, I'm never am. All right. So while the respondents recounted the killings of several family members or others connected to the respondents, and then, you know, discussion continues. And then when we talk about relocation, the immigration judge correctly considered that the respondents, three siblings and other family members live elsewhere in Mexico without harm or problems. That's a clear. Did she recount why any of the family members were killed in the sense that Benito and the other family members were of a rival gang? Anything like that? No. And that another problem, because the I.G. just didn't go there. We don't know. Because when she testified that the family members were killed, logical for me would be to ask where, why, so forth. Did you ask her that at the hearing? We don't have it in the record. She said she did not know why. But then there is no other questions about, like, where. Because if you're talking. Are you saying that the I.G. was at fault for not developing the record? Correct. That's what I think. On top of everything else. Also, what seems to me the opposite side in this case has a position that because a respondent in the removal proceedings did not establish the facts enough for asylum, we don't have to properly analyze it at the appeal stage by the BIA. But then how do we know that the respondent did not establish all the facts that are necessary if we do not conduct a proper analysis on appeal? So I do not believe that the errors by the agency can be cured by just saying the respondent did not establish enough. Tell me, you know, show me the analysis and, you know, then we will not be here. Could you answer one other question? Did the petitioner have counsel at the I.G. hearing or was it pro per? Yes, she did. She had puns. Yes, she did. That was not me. So I would not be able to tell you what happened back then exactly. Thank you so much for your attention. Thank you. Thanks to both counsel. The case is submitted.
judges: PAEZ, BEA, BRESS